Drew et. al. v. Drew et. al., No. 174-6-10 Cacv (Teachout, J., Sept. 23, 2013).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| Caledonia Unit | Docket No. 174-6-10 Cacv |

**BLAINE DREW and PAMELA DREW**

> **v.**

**EVERETT DREW and NORMA DREW**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Plaintiffs seek recovery of $13,700 that both Plaintiffs and Defendants claim they are entitled to under a written Equity Reimbursement Agreement they made when Plaintiffs, who are a husband and wife, purchased from Defendants, who are the parents of the husband, the family home previously owned by Defendants.

The facts are largely undisputed; the dispute is over the interpretation of the rights and obligations of the parties under the terms of their agreement as applied to the circumstances that occurred after the agreement was signed in 2004. Plaintiffs also claim consequential damages for refusal to pay, and penalties, punitive damages, and attorneys' fees based on the Defendants' failure to timely discharge a mortgage. Defendants claim they are entitled to keep the $13,700, and that they had no obligation to discharge the mortgage as long as the Agreement was in effect.

Plaintiffs are represented by Attorney Stephen J. Craddock. Defendants are represented by Attorney Charles D. Hickey. Oral argument was held on December 21, 2012 on Defendants' Motion for Summary Judgment, at which time some rulings were made on the record. The evidentiary final hearing was held on March 14 and August 8, 2013. Based on the prior rulings and evidence admitted, the Court makes the following findings of fact and conclusions of law.

### Facts

In the spring of 2004, Plaintiffs Blaine and Pamela Drew, a married couple (hereinafter "Buyers"), agreed to buy from Blaine's parents, Defendants Everett and Norma Drew (hereinafter "Parents"), the Parents' family home, and the Parents agreed to finance the purchase. The parties did not agree on the value of the property. The Parents believed that its value was $125,000, whereas the Buyers believed, based on an appraisal they obtained, that the value was $110,000. The parties reached a compromise and entered into a one page, handwritten purchase and sales contract, signed by all parties, in which they agreed on a purchase price of $110,000 with specifically described financing from the Parents, but if the Buyers sold the house within 15 years for more than

$110,000, they would owe the Parents an additional $15,000, the agreement to be secured by a mortgage. Lawyers were consulted and formal documents prepared for a closing.

On July 1, 2004, the closing occurred. Buyers signed three documents: a Note for $110,000 payable to the Parents, an Equity Reimbursement Agreement concerning terms applicable to the $15,000 conditional obligation, and a Mortgage in the amount of $125,000 securing performance of both the Note and the Equity Reimbursement Agreement obligations.

Pertinent terms of the Equity Reimbursement Agreement are as follows:

FOR VALUE RECEIVED, we, Blaine Everett Drew and Pamela Jean Drew, husband and wife, promise to Everett W. Drew and Norma S. Drew, husband and wife, that, having this day purchased from Everett W. Drew and Norma S. Drew certain premises at 202 Route 2 East in Danville, Caledonia County, Vermont ("the premises"), in the event that Blaine Everett Drew and Pamela Jean Drew, or either of them, shall close on the sale of the premises at any time prior to June 15, 2019, then they shall pay at closing to Everett W. Drew and Norma S. Drew, or the survivor of them, a sum as additional consideration for the initial purchase of the premises, the sum by which the gross sale proceeds exceeds a gross sale price of $110,000, but not more than $15,000.00, and upon the following additional terms and conditions:

(1) The payment obligations shall not apply to any conveyance of the premises in mortgage, nor to any conveyance of utility or other easements or right of way, unless such conveyance is given for consideration, in which event all gross proceeds from such conveyance shall be paid over to Everett W. Drew and Norma S. Drew at the time of such conveyance, up to a maximum of $15,000.00

(2) In the event of any conveyance in fee of less than the entire premises, the gross proceeds from the sale, up to a maximum of $15,000 shall be paid to Everett W. Drew and Norma S. Drew.

(3) It is the intention of the undersigned that any proceeds received from the sale of any or any part of the these subject premises which is received prior to June 15, 2019 shall be paid over to Everett W. Drew and Norma S. Drew, or the survivor of them, up to a maximum of $15,000.

The Buyers duly made mortgage payments to the Parents for 4 ½ years.

In early January of 2009, the Buyers obtained approval for refinancing. The refinancing mortgagee contacted the Parents for a payoff figure for the mortgage they held, which the Parents supplied on January 23, 2009. It included not only the outstanding amount on the Note, but an additional $15,000 which the Parents claimed. The Buyers did not agree that they owed the additional $15,000, but wished to take

2

advantage of the financing opportunity, even though in order to close that meant borrowing the additional $15,000 from the refinancing mortgagee so it could be paid to the Parents and paying interest on it at 5.5% over 30 years. There is no evidence that the Buyers ever waived their right to claim the return of the $15,000. Everett Drew testified that the purpose of the Agreement was to give him control of the property for 15 years, but the extent of control is defined by the documents.

The refinancing occurred on February 23, 2009. The parents were not present. No agreement was reached as to the consequences of the refinance on the issue of the status of the $15,000 conditional obligation under the Agreement. The property was deeded to Blaine Drew only, who executed a new note and mortgage to the refinancing mortgagee for $167,887, which included the payoff to the Parents on the Note, the additional $15,000 the Parents claimed, and additional funds used to pay other obligations. On March 4, 2009, the Parents received a check for the payoff amount they claimed, which included the balance due on the Note and the additional $15,000.

Shortly thereafter, the Buyers sought the return of the $15,000 from the Parents, who refused to give it to them, and the dispute developed. Time passed and no resolution was achieved. There was a great deal of animosity between the parties. They did not speak. Everett Drew was particularly angry and made rude gestures and insulting comments when he saw the Buyers in the community. Everett Drew testified that once he received the $15,000, it was his.

Although the Parents had been paid the full amount due on their note plus the $15,000, the Parents did not sign a discharge of their mortgage. It is unknown why the refinance company did not ensure that such a discharge was obtained and recorded. In October of 2009, the Buyers' attorney prepared a draft complaint seeking recovery of $13,700 and communicated it to the Parents' attorney. The draft complaint did not make a claim for failure to discharge the mortgage. There is disagreement about how and when the fact that the mortgage was undischarged came to the attention of the parties and their attorneys. However it happened, the Buyers' attorney first became aware of the issue in April of 2010. This became an additional source of dispute between the parties. Once the issue was recognized, the Buyers were seeking a discharge and the Parents did not discharge the mortgage.

In the spring of 2010, the Buyers sold an easement to the State of Vermont for $1,300. All parties agree that under the terms of the Equity Reimbursement Agreement, the Parents were entitled to these proceeds as of the date of closing on the easement. The Buyers nonetheless claimed entitlement to return of the balance of $13,700, as well as a discharge of the mortgage. On May 20, 2010, the Buyers' lawyer sent the Parents a mortgage discharge form to sign. In a responsive letter dated May 31, 2010, the Parents acknowledged that the mortgage was not discharged. They refused to either return the $13,700 or discharge the mortgage.

Blaine Drew claims that as a result of the failure of the Parents to discharge the mortgage, he lost an opportunity to do another refinance and obtain an even more

3

favorable interest rate, but he never filed the application and has not proved specific consequential damages.

The complaint was filed on June 10, 2010 and asserted four counts: unjust enrichment, breach of contract, a declaration that the agreement was void ab initio, and a claim for failure to discharge the mortgage. Shortly thereafter, on July 15, 2010, the Parents signed a discharge of the mortgage. However, the document sat in the file of the Parents' attorney. During this period, the parties and their attorneys were discussing the issues. The Parents apparently took the position that they had no obligation to discharge the mortgage as long as the Buyers were seeking the return of the $13,700. The Buyers' attorney thought that there was some validity to this position, as the Parents were perhaps entitled to some form of security under the Equity Reimbursement Agreement. The mortgage discharge was finally recorded in the land records on July 11, 2011.

The Parents' attorney filed a Motion for Summary Judgment, and at a hearing on the motion held on December 21, 2012, the Court granted summary judgment to the Defendants on the issue of the validity of the Agreement, ruling that the Equity Reimbursement Agreement was an enforceable agreement. Summary judgment was denied on the other counts on the grounds that there were either disputed or insufficient facts. The Court ruled on the record that the Parents were not entitled to full ownership of the $13,700 because the condition that would trigger their interest in the money had not yet occurred: there had been no sale of the property (except for the sale of the easement), and under the terms of the Agreement, they had no claim to ownership of the money unless and until that occurred. The possibility was discussed that they might have some claim to some form of security for the obligation, but resolution of that issue was left for final hearing.

The amount of interest that Blaine Drew paid on $15,000 from the date that sum was received by the parents, March, 2009 to the date of sale of the easement in May, 2010 is $955.53. The amount of interest that Blaine Drew paid on $13,700 from May, 2010 to the date of hearing in August, 2013 was $2,394.95.

Buyers incurred attorneys' fees from Attorney Clarke Atwell, who originally represented them, but Attorney Atwell has waived any claim for fees. Buyers have incurred attorneys' fees from Attorney Stephen Craddock in the amount of $6,600. The bill does not differentiate between the amounts attributable to the Agreement issue and the amount attributable to the undischarged mortgage issue.

**Analysis**

*Unjust Enrichment, Breach of Contract*

The parties' rights and obligations with respect to the disputed $13,700 are dependent on the governing instrument, the Equity Reimbursement Agreement, which was executed by Buyers and accepted by the Parents at the closing on July 1, 2004. Its terms are set forth above.

4

At the time the Agreement was executed, there were at least five possible scenarios that could predictably occur:

1. *Buyers would retain ownership of the property until June 15, 2019.* In this case, the Agreement would remain in effect and represent a conditional obligation on the part of Buyers until June 15, 2019, but as of that date, Buyers would have no further obligation under the Agreement, and the Parents would never be entitled to an additional $15,000.

2. *Buyers would sell all the property before June 15, 2019 for less than $110,000.* In this case, Buyers would not owe the Parents anything under the Agreement.

3. *Buyers would sell all the property before June 15, 2019 for more than $110,000.* In this case, Buyers would owe the Parents the excess over $110,000 up to $15,000.

4. *Buyers would sell a partial interest in the property before June 15, 2019.* In this case, Buyers would owe the Parents the entire gross proceeds from such a sale but not more than $15,000. This is what occurred with respect to the sale of the easement, and all parties agree that the Parents were entitled to keep the $1,300 in proceeds from the sale of the easement in May of 2010.

5. *Buyers would refinance before June 15, 2019.* This was specifically permitted by the terms of the Agreement, which specified that a refinance would not trigger the conditional payment obligation.

The provision entitling the Buyers to refinance is a material term of the agreement. There are two ways a refinancing might have occurred during the Agreement period. One is that a new mortgagee would refinance the balance due on the $110,000 Note and take a second mortgage, junior to the Parents' existing mortgage which would remain in place but would then secure only the Buyers' $15,000 conditional obligation under the Agreement. This might occur with private financing but is highly unlikely with any commercial mortgagee. It is axiomatic that commercial lenders require, as a condition of the loan, that they hold a first mortgage on the property (except for home equity loans, which are not at issue in this case).

The second and predictable form of refinance is that the new lender would require that the Parents' mortgage be discharged so that it, the new lender would have the first mortgage on the property. At the time of entering into the Agreement, the parties had the opportunity to anticipate this predictable situation and contract accordingly. They could have agreed on a form of substitute security for performance of the Agreement in that event, such as that $15,000 would be placed in escrow to secure performance. They did not do so. Instead, they simply provided that the Buyers were specifically authorized to refinance without triggering the conditional payment obligation. The fact that they failed to provide for substitute security in the scenario that was the most predictable one to occur out of all the possibilities does not change the other terms of the Agreement. They remain in place and are enforceable.

When the Parents were contacted for a payoff figure, they breached the Equity Reimbursement Agreement by claiming that they were owed $15,000 when they were

5

not.  The condition that triggered that obligation on the part of Buyers had not yet occurred, and may never occur.  The Parents were not entitled to that money.  The Parents breached the Agreement a second time when they refused to return the $15,000 to the Buyers upon request.

The Parents counsel argued that when Blaine Drew proceeded with the refinancing that included a payoff to the Parents, a new agreement was reached between the parties, but there is no evidence that a new agreement was reached, or what its terms were.  There is no evidence that the Buyers ever agreed that the Parents could keep all the money.  There is no showing of a waiver on the part of the Buyers of their claim to ownership of the $15,000 that they borrowed from the new lender.  If the Parents' argument is that the Buyers agreed that the Parents could hold the $15,000 as security for the conditional obligation under the Agreement, such an agreement could not be accomplished in one year and thus is not enforceable under the Statute of Frauds.  Moreover, the evidence does not support a finding that such an agreement was made, either verbally or by conduct.

The Parents continue to be in breach of contract, because the amount to which they are presently entitled is only $1,300.  Under the Agreement, they are not entitled to the balance of $13,700 because the condition that would entitle them to it has not yet occurred.  It may never occur, and their conditional right to those funds may expire.

While it is reasonable that the Parents may want to have some form of security, they did not contract to have any security in the event of refinance, which they explicitly agreed was permitted.  Therefore, they do not have a contractual right to keep the money as security for a conditional obligation.  They certainly do not have a right to keep the money as a matter of right, as Everett Drew seems to claim.

Thus, based on both breach of contract and unjust enrichment, Buyers are entitled to $13,700 from the Parents.  They are also entitled to consequential damages resulting from the wrongful retention of the funds by the Parents.  This is the $3,350.48 that the Buyers had to pay in interest from March of 2009 to the hearing date in August of 2013.  If the Parents had returned the money, the Buyers could have paid that amount of the mortgage off, thereby relieving themselves of that interest cost.  Thus, Plaintiffs are entitled to a judgment of $17,050.48 as of September 1, 2013.  Interest shall run from that date forward on the principal balance of $13,700 at the rate of 5.5% per annum (the rate that the Buyers are required to pay on the loan used to borrow the money).

*Undischarged mortgage*

27 V.S.A. § 464(b) provides that "[w]ithin 30 days after full performance of the conditions of the mortgage, the mortgagee of record shall execute and deliver a valid and complete discharge . . . .  If a discharge is not executed and delivered within 30 days, the holder and any servicer shall be jointly and severally liable to any aggrieved party in a civil action for statutory damages equal to $25.00 per day after the expiration of the 30 days, up to an aggregate maximum of $5,000.00 for all aggrieved parties. . . ."

6

27 V.S.A. § 464(d) provides that, "[i]n addition to any statutory damages, the mortgagee shall also be liable for consequential damages, punitive damages, court costs, and reasonable attorney's fees to any aggrieved party who substantially prevails in an action under this section. . . ."

The parties disagree about when the Parents should have signed a mortgage discharge. There is no question, however, that a specific demand to sign and deliver a mortgage discharge was made to the Parents on May 20, 2010. Since they had received and retained not only all that was due them under the Note, but an additional $15,000 to which they were not entitled, they had an obligation under the statute to sign and deliver a discharge of the mortgage no later than 30 days after May 20, 2010. They did not complete this until July 11, 2011, 385 days after they were required to do so. At $25 per day, the total would be $9,625, so, pursuant to § 464(b), Plaintiffs are entitled to the maximum of $5,000. This is a clearcut statutory remedy available to Plaintiffs under these circumstances, and not a matter of discretion.

While Plaintiffs claim consequential damages for missing an opportunity for a favorable refinancing opportunity due to the undischarged mortgage, this aspect of their claim has not been proved by a preponderance of the evidence.

Plaintiffs claim punitive damages, but under the circumstances of this case, in which the Parents were represented by an attorney who held the mortgage discharge in his file and Plaintiffs' own attorney thought there may be a valid reason for the discharge not to be delivered until the dispute was resolved, punitive damages are not warranted.

Plaintiffs claim attorneys' fees under the statute. There are no fees payable by Plaintiffs for Attorney Atwell's work. The evidence does not show what portion of fees payable to Attorney Craddock were incurred for the claim of undischarged mortgage. However, he responded to Defendants' Motions for Summary Judgment, which included the mortgage discharge issue, and argued and represented the Plaintiff at the motion hearing and evidentiary hearing. The mortgage discharge issue was actively pursued by him on all those occasions. However, the bulk of the legal work related to the claims based on the Equity Reimbursement Agreement. Therefore, a reasonable portion of attorneys' fees attributable to the mortgage discharge issue is one-fourth, resulting in an amount for attorneys' fees of $1,650.00.

## ORDER

Plaintiffs' counsel shall prepare a form of Judgment based on the foregoing findings of fact and conclusions of law. Defendants' counsel shall have five days to file any objection.

Dated at St. Johnsbury this 23rd day of September, 2013.

_____
Hon. Mary Miles Teachout
Superior Court Judge

7